UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOHNNY LEE ATKINS | CIVIL ACTION NO. 06-cv-0785 |
| VERSUS | JUDGE HICKS |
| B. LOFTON, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Johnny Lee Atkins ("Plaintiff") filed this civil rights action against officials at the Caddo Correctional Center ("CCC"), based on claims that Plaintiff did not receive proper treatment for a back injury. Defendants have filed a Motion for Summary Judgment (Doc. 84), and Plaintiff has responded with his own Motion for Summary Judgment (Doc. 92). For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Summary of the Allegations**

Plaintiff alleged in his complaint that he slipped and fell in his cell because his shower shoes were too big. Plaintiff's back began to hurt, and he asked a deputy if he could make a medical emergency. The deputy declined because Plaintiff was able to get up, and the deputy had not seen Plaintiff fall. Plaintiff alleges that the pain hit him with much greater severity later when he was in his cell, and he began crying and yelling.

Plaintiff alleges that his cellmate hit the emergency call button, and Deputy Coleman responded (although not as quickly as Plaintiff desired). A team of deputies showed up with a backboard and a nurse, and they asked Plaintiff to get on the board. Plaintiff said he could not do so, and one of the deputies grabbed him and pulled him from his mattress to the floor and then onto the board. The deputies started moving Plaintiff, but the backboard fell and hit the floor. Plaintiff alleges that the deputies treated him roughly and laughed.

Plaintiff complains that he did not receive adequate medical care afterward. He admits that he received X-rays and some medication, but Plaintiff complains that it was not sufficient and "a lot of things could have been done more professional."

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Summary Judgment Record**

Captain Rick Farris testifies that Plaintiff signed a property sheet when he was admitted to the jail, and the sheet indicates that Plaintiff requested and received size 10

shower shoes and tennis shoes. Plaintiff testified at his deposition that "what it says on paper ain't exactly always what's going on in here" with respect to shoes and clothing. In any event, Plaintiff has not alleged that any defendant is liable based on the size of shoes that were issued.

Plaintiff testified that it made him mad when he heard from other inmates that Deputy Coleman, when responding to the emergency call, did not take the most direct route through the pod when he walked to the cell. Plaintiff admits that Coleman did, however, respond within minutes, and additional help was soon summoned. That help arrived within about 30 minutes, and Plaintiff was loaded on the backboard. Defendants have not submitted all of the pages of Plaintiff's deposition, and it appears that his testimony about his being placed on the backboard is largely omitted. There is also no direct testimony from any defendant or other witness to those events. As for the collapse of the stretcher, Plaintiff agreed with defense counsel that the deputies "probably didn't intend" for the stretcher to fall, and he eventually conceded, "No, it wasn't intentional."

Sheila Wright is a registered nurse and serves as the Health Services Director at CCC. She testifies that she is familiar with the medical history of Plaintiff, who was booked into CCC in December 2005. Plaintiff underwent an inmate screening at that time, and he indicated that he suffered from mental health problems.

Nurse Wright testifies that when Plaintiff arrived in the medical department in April 2006 after the principal events alleged in the complaint, Plaintiff was given pain medicine,

and X-rays were ordered for his cervical and lumbosacral spine. The cervical X-ray report was completed the same day, and the lumbosacral report the following day. Both indicated negative results.

Nurse Wright testifies that Plaintiff nonetheless continued to complain of pain, and he was provided 600 milligrams of Ibuprofen. It was ordered that Plaintiff be placed on the lower tier of the housing unit in a bottom bunk so as not to aggravate any possible pain. Plaintiff submitted a kite communication a couple of days later and complained of back pain. He requested to be seen at LSU Medical Center. Because of the complaint, Nurse Wright testifies, Dr. Roberts reviewed the original X-rays, but he found nothing that would require further medical care. Plaintiff was also referred to LSU Health Services Center the next day for evaluation of his complaints. Physicians at the hospital diagnosed Plaintiff with lumbar strain and provided 800 milligrams of Ibuprofen.

Two days later, Plaintiff submitted another kite complaining of back pain and that loud noises made him nervous. Plaintiff was referred for a mental health evaluation. A week later, Plaintiff submitted another kite complaining of neck and back pain. Plaintiff was evaluated by a doctor three days later, and he was again given Ibuprofen. It was determined that Plaintiff had an exaggerated response to his condition.

Nurse Wright testifies that Plaintiff complained about sharp back pain on Sunday, April 30, ten days after his last physician evaluation. A deputy contacted the medical department and said that Plaintiff was able to move his neck, hands, and arms without

difficulty. The weekend medical personnel told the deputy that Plaintiff had a non-emergency condition that did not require notification of the weekend on-call nurse for emergency treatment. The staff told the deputy to tell Plaintiff that he would be evaluated by a nursing staff on Monday. Plaintiff was given OTC medications on Monday and seen by a doctor on Tuesday. The doctor prescribed stretching exercises. Nurse Wright testifies that the weekend medical staff and the deputy handled the non-emergency situation in accordance with weekend procedures. The procedures described by Wright are consistent with testimony about weekend medical staffing that has been offered in similar cases.

Nurse Wright testifies that Plaintiff refused to appear at roll call on May 1, saying he was too scared to move. She testifies that Plaintiff did not suffer from a condition on that day that prevented him from moving or required that he remain stationary. Captain Farris also offers testimony about this incident. He counts that Plaintiff was ordered to be placed on Behavior Modification Status ("BMS") because of his refusal to attend roll call. BMS is a temporary restriction of movement within the same housing unit. Captain Farris testifies that BMS is not punishment or discipline. Rather, it is a description of inmates who remain in the 100-inmate pod (supervised by two unarmed deputies inside the pod) but are ordered to restrict their movement to a certain area after a failure to follow rules. Other than the restriction on movement, the other conditions on the inmate are generally the same as those imposed on other inmates in the pod.

**The Constitution and Inmate Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Analysis and Conclusion**

Defendants have come forward with competent summary judgment evidence in the form of affidavits, deposition testimony, medical records, and other certified documents. Plaintiff's motion is not supported by any evidence. The summary judgment record shows that Plaintiff has complained of a serious medical condition; however, CCC medical staff and outside physicians have examined Plaintiff on a number of occasions and have not found objective evidence to support pain to the extent claimed by Plaintiff. They have nonetheless given Plaintiff medication, and Plaintiff has been prescribed exercises to help alleviate his claimed back pain. Contrary to Plaintiff's allegations, there is no evidence that Plaintiff was wrongfully placed in lockdown or otherwise punished because of his medical condition.

Deliberate indifference is "an extremely high standard to meet," and even acts that may be medical malpractice are not necessarily sufficient to meet the standard. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A decision whether to provide additional treatment "is a classic example of a matter for medical judgment." Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir.2001) (quoting Estelle, 97 S.Ct. at 293). The summary judgment evidence reflects frequent care being administered in response to Plaintiff's complaints. Plaintiff has not been satisfied with the medical care he received, but that is a far cry from establishing deliberate indifference to a serious medical need. With respect to Plaintiff's allegations about being mishandled when he was placed on the backboard, Defendants have not offered direct evidence on this issue, but their motion asserted that the collapse of the stretcher was unintentional and that the deputies attempted to prevent the collapse. The portions of Plaintiff's testimony that are in the record suggest agreement that the event was not intentional, and Plaintiff has not responded to the motion's challenge with evidence to the contrary.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 92) be **denied** and that Defendants' Motion for Summary Judgment (Doc. 84) be **granted**, dismissing all claims against all defendants.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of December, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE